MASSIE & PATTERSON v. HALSTEAD et al.

(Circuit Court, S. D. West Virginia. November 30, 1903.)

1. TAX DEED—VALIDITY—ERRONEOUS DESCRIPTION.

The owner of a tract of land, who had disposed of a portion of the same lying within the boundary of another survey, by a compromise judgment fixing such boundary, had the acreage of his tract reduced accordingly on the taxbooks of the county. His land was sold for taxes, but the deed executed on such sale, while for the correct number of acres, described a part of the land he had so disposed of and on which the taxes had been paid. *Held*, that it was invalid to convey title to the land described, and constituted a cloud on the title thereto which the owner was entitled to have removed.

In Equity. Suit to set aside tax deed.

James F. Brown, for plaintiffs.
Adam Littlepage, for defendants.

KELLER, District Judge (orally). This was a suit in equity brought by the plaintiffs against the defendants for the purpose of setting aside, and having decreed null and void, as a cloud upon their title, a certain tax deed obtained by defendants from the clerk of the county court of Nicholas county, W. Va., in alleged pursuance of a sale made by the sheriff of Nicholas county of a tract of 432 acres of land returned delinquent in the name of W. E. Chilton for nonpayment of the taxes of 1897, and sold by the sheriff to Maggie L. Halstead in March, 1900. The particular ground upon which it is asked that this deed be decreed to be void as a cloud upon the title of plaintiffs is that the 432 acres actually sold in the name of said Chilton was the balance of a tract of 1,100 acres, 668 acres of which were within the boundary of land owned by plaintiffs, and for which portion so lying within their boundary they had, in 1891, obtained a verdict against Chilton, under a compromise in the United States Circuit Court for the District of West Virginia, but that the deed made by the clerk was for the land they had thus recovered from Chilton, and described land lying within their boundary. The facts in the case seem to be as follows: The plaintiffs are trustees of the estate of R. H. Maury, who owned what is known as the "Jacob Skiles Survey" of 32,097 acres situated in Nicholas and Clay counties, and patented July 21, 1797, to said Skiles by the commonwealth of Virginia. In 1885 a controversy had arisen between the predecessors of plaintiffs in the trust and the owners of a junior patent known as the "Pryor & Tupper Patent" of 14,500 acres, lying to the northeast of the Skiles patent, and calling for the Skiles patent as a boundary line, but which junior patent, if run out by course and distance, would interlock with the Skiles. This junior patent had been forfeited to the commonwealth of Virginia, and was proceeded against and decreed to be sold, and was so sold after being subdivided by the commissioner into lots for convenience of sale. One of these lots, containing 1,100 acres, came by mean conveyances into the possession of one Peter Baker, and in 1885, when ejectment was brought by the predecessors of plaintiffs herein against the various defendants who were within the interlock, Peter Baker was one of the defendants.

In that ejectment suit, brought in the United States District Court for the District of West Virginia (exercising circuit court powers), the true line on the northeast side of the Skiles survey was established by the verdict, and the lots of Baker and other holders of the Pryor & Tupper patent were found to be largely within the correct boundary of the Skiles survey, but the jury found for the defendant Baker in that suit on the ground of adverse possession. On September 3, 1890, said Baker sold his 1,100-acre tract of land to the defendant W. E. Chilton, and, as before stated, in 1891 the predecessors of plaintiffs bought that portion of said 1,100 acres which lay within the Skiles survey from said Chilton, and, instead of taking a deed therefor, instituted an action of ejectment, and took a verdict for such portion of said 1,100 acres.

It will thus be seen that in 1891 the trustees of the Maury estate reacquired the title of Baker and his vendee, Chilton, to that portion of the 1,100-acre Baker lot which lay within their boundary, and which, under the verdict of the jury, they had lost to Baker by reason of his continued adverse possession under color of title. The record in this case shows that during all the time of this litigation Maury's trustees had been paying taxes on their entire survey; therefore there was no occasion for them to put upon the land books of Nicholas county any additional land after their verdict against Chilton in the ejectment suit. But Chilton, having been devested of title, by said verdict, to the 668 acres lying within the Skiles survey, went before the county court of Nicholas county on June 22, 1894, and had the following order entered of record:

"On motion of W. E. Chilton, by Alderson & Horan, his attorneys, and it appearing to the court that he is charged upon the land books of 1893 with 1,100 acres of land in Grant district, and assessed with taxes thereon for said year, and also with certain back taxes upon said tract, and it further appearing to the court that 668 acres of said tract are owned by Maury's estate, and situated in their boundary of land and taxes paid by them, it is therefore ordered that said tract of land be corrected and charged upon the land book of next year at the corrected acreage, to wit, at 432 acres, and the clerk is directed to enter said tract at the corrected acreage on the land books of next year; and it is further ordered that said Chilton be released and exonerated from the payment of the taxes for the year 1893 and said back taxes on an acreage greater than 432 acres, which taxes so released are as follows: State, $8.52; state school, $3.40; county, $11.06; teachers, $16.15; building, $13.75; and road, $3.40; and the sheriff is directed to refund said amount so released to said Chilton.

"The prosecuting attorney being present, representing the interest of the state, county, and district."

A similar order, exonerating Chilton from said taxes for the year 1894, was entered September 18, 1895, and a certified copy thereof is in the record in this case. In accordance with these orders, the assessment of lands to Chilton was reduced to 432 acres, and it was this 432 acres that was sold by the sheriff in 1900 for nonpayment of taxes for the year 1897. In the bill it is declared that the deed is null and void (1) because the sale by the sheriff of Nicholas county to the defendant Maggie L. Halstead was null and void because of irregularities, and (2) because the sheriff's lists of sales were not returned within the time nor in the manner required by law; but no proof was taken upon these questions, and they cannot be considered.

The main question appears to be as to whether the land conveyed by the deed is in fact the land sold by the sheriff, to wit, the 432 acres remaining assessed to Chilton after the reduction made by the county court's order of 1894, and, if it is not, whether it is land within the boundary of the Skiles survey. Upon this question depositions were taken which show quite clearly and conclusively that the father of the defendant took the surveyor upon the 1,100-acre tract and directed him where to make his survey for the tax deed, and that all the land so surveyed, and for which the tax deed was subsequently made to the defendant herein, was southwest of the so-called "verdict" line found by the jury as the northeast line of the Skiles patent in the ejectment suit against Peter Baker, and consequently was within that part of the 1,100-acre tract recovered by the trustees of the Maury estate from W. E. Chilton in the ejectment suit of 1891, and was the land, or part of it, which he had stricken from the land book of Nicholas county by the order of the county court heretofore quoted; that no part of the land outside of the said verdict line is embraced in the description contained in the said tax deed. The defendant here could acquire no title to any land by the tax deed except Chilton's title to such land as was sold at the tax sale. That sale was of Chilton's title to the 432 acres remaining to him after the verdict in the ejectment suit of 1891. The fact that defendant (through her father) got the deed made for lands other than those sold at the tax sale, whether the mistake was made innocently or fraudulently, renders such tax deed void, and its existence for lands recovered by plaintiffs' predecessors in the trust from Chilton constitutes a cloud upon the title of plaintiffs which a court of equity ought to remove. It appears to be a case wherein the defendant purchased "Whiteacre," and took a deed for "Blackacre," and such a deed, it is an elementary principle, can convey no title to "Blackacre." Nevertheless, such deed would constitute a cloud upon the title of the true owner of "Blackacre."

From these considerations I am of opinion that the plaintiffs are entitled to the relief prayed for in their bill, and a decree will be prepared accordingly.